This case has been before me for four years. The original suit was begun by the wife against the husband for separate maintenance. A counter-claim was filed by the husband for absolute divorce for desertion. The wife was then granted permission to amend her suit and apply for divorce on the ground of desertion. Several hearings were had before me. The first terminated in an offer by the wife to return to the husband. I continued the matter. She returned but again left him. There seems to have been some trouble about a maid. After the first hearing I directed that the maid leave the house, hoping in that way to restore marital felicity. She did leave, but the wife, after a short sojourn, left also. I cannot find in the testimony, which is voluminous, any acts on the part of the husband which would justify the wife in going. She had known him fifteen years before their marriage, and she knew that he had an adopted daughter, Eleanor, *Page 46 
whom the maid had cared for from childhood. The couple went to live at Rye, New York. The wife did not like the habitation and they moved to Westfield, New Jersey. The wife apparently was still unsatisfied and went away once, returned and left again, as I have stated. There is testimony that her final departure was because of an alleged attempt at suicide on the part of her husband, which her learned counsel contends is such extreme cruelty as to render it unsafe for her to live with him any longer. In the first place, there is no evidence of the fact that his wounding by a bullet from a revolver in his bedroom when he was there alone was deliberate. He insists it was accidental. Secondly, I am not prepared to say as a general proposition that an attempt at suicide on the part of a husband is extreme cruelty. In certain cases I have no doubt it would cause a devoted wife much mental anguish and perhaps a personal fear for her own safety. In other cases I can conceive that the wife might view such an attempt with equanimity, and, if the result were successful, even with satisfaction.
The oldest case of this character that I recollect isXanthippe v. Socrates (Athenian report annotated by Platocirca, 400 B.C.). However, it is not fully reported, and the books are silent as to what feelings either of anguish or satisfaction inspired Xanthippe when her husband drank the cup of hemlock. It is undenied that their marital relations were as much strained, perhaps more so, than those of the parties in the case at bar. I may add that the books are also silent as to whether Socrates drank the hemlock solely because of the decree of the Athenian court or with a sense of relief at the cessation of relations with a spouse who had not been altogether congenial. The present case, I believe, closely resembles that ofXanthippe v. Socrates, supra.
I will advise a decree of divorce on the ground of desertion in favor of the husband, the counter-claimant. *Page 47